1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

SOHAIL MASOOD,

10
                              Plaintiff,

11                                                          CASE NO. C06-1104JLR

12          v.                                              ORDER

13   PARVEEN SALEEMI,

14                              Defendant.

15

16                              **I.  INTRODUCTION**

17          This matter comes before the court on Defendant Parveen Saleemi's motion for

18   summary judgment (Dkt. # 48) and Plaintiff Sohail Masood's motion to lift the stay on

19   discovery (Dkt. # 50).  Although the parties have requested oral argument, the court finds

20   these motions appropriate for disposition based on the parties' briefs[1] and accompanying

21   declarations.  For the reasons stated below, the court GRANTS Ms. Saleemi's motion for

22   summary judgment (Dkt. # 48), and DENIES as moot Mr. Masood's motion to lift the

23   stay on discovery (Dkt. # 50).

24

25

26          [1]Ms. Saleemi timely filed her reply brief in support of her motion for summary judgment
     on May 17, 2007 (Dkt. # 60).  Shortly thereafter, without seeking leave of the court, Ms. Saleemi
27   filed a second, substantively amended, reply brief (Dkt. # 65).  Ms. Saleemi's filing of a second
     reply brief violates this court's local rules; accordingly, the court considers only Ms. Saleemi's
28   first reply brief.

     ORDER – 1

## II.  BACKGROUND

On April 16, 2007 Ms. Saleemi filed a motion for summary judgment, which raises three legal issues: (1) whether the court has subject matter jurisdiction of this case under the probate exception to federal jurisdiction; (2) whether Mr. Masood may assert claims on behalf of the estate of Khatoon Shahood; and (3) whether Mr. Masood's amended complaint states claims upon which relief can be granted.  In addition, Ms. Saleemi's motion contains negative factual contentions addressing the elements of Mr. Masood's claims.  On May 1, 2007, Mr. Masood filed a motion to lift the stay on discovery and to extend the date for his response to Ms. Saleemi's factual assertions under Federal Rule of Civil Procedure 56(f).  Shortly thereafter, the parties filed a stipulation regarding their pending motions (Dkt. # 53).  In the stipulation, Mr. Masood agreed to respond to the three legal issues identified above, for which further discovery would be futile.  Pursuant to the parties' stipulation, the court resolves these threshold issues before reaching Mr. Masood's motion to lift the stay.  The court therefore relies on Mr. Masood's allegations as contained in his amended complaint, which are summarized here (Dkt. # 46).

Mr. Masood asserts claims against Ms. Saleemi, his sister, on his own behalf and as the "holder, entirely or in major part," of tort claims for injury to their mother, Khatoon Shahood.  Mr. Masood is an Oregon resident.  Ms. Saleemi is a Washington resident.  Ms. Shahood, died in Karachi, Pakistan in late 2003.  Mr. Masood contends that as Ms. Shahood's sole or majority heir, he is authorized to act as the personal representative of Ms. Shahood's Estate (the "Estate").[2]

---

[2]According to Mr. Masood, Ms. Saleemi has no ownership interest in the Estate's claims, because Ms. Saleemi proximately caused the death of Ms. Shahood.  Mr. Masood admits that other heirs may also be entitled to inherit under the Pakistani law of intestate succession, but avers that he cannot locate these heirs.

ORDER – 2

Mr. Masood's claims against Ms. Saleemi arise from events occurring in Karachi, Pakistan.  According to Mr. Masood, he provided financial support to his mother for more than 25 years prior to her death.  In 1995, he purchased and transferred title of a residence in Karachi, Pakistan to Ms. Shahood.  In late 1996 or 1997, Ms. Saleemi moved to the Karachi residence to live with Ms. Shahood.  Mr. Masood agreed to provide money to support the household in exchange for Ms. Saleemi's care of their ailing mother.  Mr. Masood alleges that in January or March 2003, Ms. Saleemi kidnapped Ms. Shahood from her residence and kept her concealed in an apartment located in a "seedy" area of Karachi.  According to the complaint, Ms. Saleemi denied Ms. Shahood proper medication and medical care in order to diminish her mother's mental faculties, and thereby facilitated the fraudulent transfer of Ms. Shahood's assets to herself.  Mr. Masood alleges that Ms. Saleemi then abandoned Ms. Shahood in Pakistan and, acting in concert with others, concealed and confined Ms. Shahood during the final months of her life.  According to Mr. Masood, Ms. Saleemi's actions, including the intentional withholding of necessary medical care, hastened Ms. Shahood's death.  Allegedly, Ms. Shahood was secretly buried without proper religious observances.  Mr. Masood contends that he did not discover his mother's burial site or Ms. Saleemi's whereabouts, until 2005 or 2006.

Mr. Masood asserts claims on behalf the Estate under Pakistani law, including false imprisonment, intentional infliction of emotional distress, and abuse of corpse.  He additionally asserts a claim on his own behalf under Washington or Oregon law for intentional infliction of emotional distress.

Discovery in this case is stayed.  The court granted Ms. Saleemi's November 30, 2006 motion for a protective order (Dkt. # 13), in which she sought to stay all discovery, arguing that Mr. Masood's claim to represent the Estate was a "fraud upon [Ms. Saleemi] and the court."  Mot. at 5.  Ms. Saleemi also averred that certain matters alleged in Mr.

ORDER – 3

Masood's original complaint are the subject of pending litigation in the United Kingdom and Karachi, Pakistan, claiming that Mr. Masood is simply seeking discovery here in furtherance of those suits.  Id. at 4.[3]  Mr. Masood filed a statement concerning his status as representative of the Estate (Dkt. # 18), and a motion for leave to file an amended complaint (Dkt. # 29), which the court granted.[4]  Ms. Saleemi now moves for summary judgment.

### III.  ANALYSIS

Although Ms. Saleemi captioned her motion as one for summary judgment, it is equivalent to a motion to dismiss in challenging only the sufficiency of Mr. Masood's pleadings.  The court thus treats Ms. Saleemi's motion as a motion to dismiss under Federal Rule of Procedure 12(b)(6).  See Mullis v. United States Bank. Ct., 828 F.2d 1385, 1387 n.6 (9th Cir. 1987).  Accordingly, the court (1) construes the complaint in the light most favorable to Mr. Masood; (2) accepts all well-pleaded factual allegations as true; and (3) determines whether Mr. Masood can prove any set of facts to support a claim that would merit relief.  See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

_____

[3]Mr. Masood's original complaint asserted claims for breach of trust and fraud.  See Compl. (Dkt. # 1).  Mr. Masood alleged that Ms. Saleemi exercised undue influence over Ms. Shahood, who transferred title of the Karachi residence to Ms. Saleemi.  Id.  Mr. Masood also alleged that Ms. Saleemi fraudulently obtained her mother's power of attorney, forging documents purporting to transfer millions of dollars worth of stock shares in a Guernsey holding company to herself and third parties.  Id.  Mr. Masood admitted that he is currently pursuing these allegations in an ongoing quiet title action in Karachi, Pakistan (originally filed against both Ms. Shahood and Ms. Saleemi), and in ongoing litigation concerning the stock shares in Guernsey and London, United Kingdom (filed against Ms. Saleemi and third parties).  See Pl.'s Reply to Order to Show Cause at 11 (Dkt. # 38).

[4]Mr. Masood's sought to clarify his status as a representative of the Estate in his amended complaint.  See Mot. for Leave to Amend (Dkt. # 29).  In addition, Mr. Masood withdrew his claims for fraud and breach of trust from the amended complaint.  See Am. Compl.

ORDER – 4

**A.    The Probate Exception to Federal Jurisdiction**

At the threshold, the court rejects Ms. Saleemi's argument that this court lacks subject matter jurisdiction because Mr. Masood's claims fall within the probate exception to federal jurisdiction.  The "probate exception" is a historical aspect of federal jurisdiction that holds "probate matters" are excepted from the scope of federal diversity jurisdiction.  Marshall v. Marshall, 547 U.S. 293, 126 S.Ct. 1735, 1746 (2006) (citing Markham v. Allen, 326 U.S. 490, 494 (1946)).  As recently clarified in Marshall, the probate exception reserves to state probate courts: (1) the probate or annulment of a will; (2) administration of a decedent's estate; and (3) disposing of property in the custody of a state probate court.  Id. at 1748.  The exception does not "bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction."  Id.  The claims contained in the amended complaint do not involve the probate or annulment of a will, administration of an estate, nor property in the custody of a state or Pakistani probate court.  Mr. Masood's claims sound in tort, which under Marshall, fall within the subject matter jurisdiction of a federal court sitting in diversity.

**B.    Mr. Masood's Claims for Injury to the Estate**

Ms. Saleemi argues that under Pakistani law, Mr. Masood lacks "standing" to personally assert claims on behalf of the Estate because he has not been appointed as its personal representative, executor, or administrator.  Mr. Masood counters that as Ms. Shahood's sole or majority heir, Pakistani law confers "standing" upon him to assert claims for injury to Ms. Shahood.  The court initially addresses the distinction between standing and capacity to sue as a representative, if only to elucidate why the parties' extensive briefing on Pakistani authority – ostensibly governing the question of standing in this suit –  is of little assistance to the court.  The court concludes that under relevant

ORDER – 5

federal authority, Federal Rule of Civil Procedure 17(b), Mr. Masood lacks the capacity to pursue claims as a representative of the Estate.

Mr. Masood's ability to assert claims on behalf of the Estate is not a question of standing. Standing involves a determination of whether a plaintiff can show an injury in fact, traceable to the conduct of the defendant. See Allen v. Wright, 468 U.S. 737, 751 (1984). According to the amended complaint, the Estate could trace a direct injury to the alleged acts of Ms. Saleemi. Thus, the Estate, which allegedly suffered false imprisonment and the denial of medical care resulting in wrongful death, has standing to bring this action.

Rather, the question before the court is whether Mr. Masood may assert claims on behalf of the Estate. This involves determining whether Mr. Masood has the capacity to bring suit as representative. See Firestone v. Galbreath, 976 F.2d 279, 283 (6th Cir. 1992); Glickstein v. Sun Bank/Miami N.A., 922 F.2d 666, 670 (11th Cir. 1991), abrogated on other grounds by Saxton v. ACF Indus., Inc., 254 F.3d 959 (11th Cir. 1991). Instructive of this distinction is Firestone, wherein the Sixth Circuit dismissed claims brought by plaintiffs on behalf of their deceased grandmother, reasoning that the grandchildren lacked capacity to bring suit as representatives of the deceased. See Firestone, 976 F.2d at 283. The Sixth Circuit observed that the district court had improperly dismissed the claims on the ground that the grandchildren lacked standing, noting that attorneys and courts frequently confuse the concepts of standing with that of capacity to sue. Id. (citing Charles A. Wright, Arthur A. Miller, & Mary K. Kane, Federal Practice and Procedure § 1542 (1990)).

In civil cases brought in federal court, Federal Rule of Civil Procedure 17(b) governs a party's capacity to sue. That rule provides:

ORDER – 6

1
2
3
4

> The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held . . . .

5
6

Fed. R. Civ. P. 17(b).  As Mr. Masood seeks to represent the Estate, Rule 17(b) requires the court to look to the law of the state in which this court sits.[5]

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

   Accordingly, the court applies Washington law, which provides that a plaintiff in a wrongful death or personal injury action on behalf of a deceased must be the personal representative of the deceased's estate.  See RCW §§ 4.20.010, 4.20.020, 4.20.060.  Correspondingly, Washington law does not permit heirs to bring such claims without first obtaining appointment as a personal representative.  Beal v. City of Seattle, 954 P.2d 237, 240 (Wash. 1998) ("A wrongful death action must be brought by the personal representative of the decedent's estate and cannot be maintained by the decedent's children or other survivors.") (citation omitted); Benoy v. Simons, 831 P.2d 167, 170 (Wash. Ct. App. 1992) (dismissing claims under RCW §§ 4.20.020 and 4.20.060 brought by grandparents of a minor child for failure to establish the appointment of a personal representative); Hatch v. Tacoma Police Dept., 27 P.3d 1223, 1224 (Wash. Ct. App. 2001) (holding spouse could not bring post-death loss of consortium claim where she was not the personal representative of her deceased husband's estate).  The term "personal representative" includes executor, administrator, special administrator, guardian or limited guardian, and special representative.  See RCW § 11.02.005.

24

---

25
26
27
28

  [5]In Pantano v. United Med. Labs., 456 F.2d 1248, 1249-50 (9th Cir. 1972), for example, the Ninth Circuit applied the law of Oregon, where the district court sat, in holding that a special administrator of an estate appointed under Nebraska law lacked capacity to bring suit, because, under Oregon law, nonresidents were not qualified to act as administrators of an estate. See also Firestone, 976 F.2d at 283 (holding that heirs lacked capacity to bring suit on behalf of estate, because the law in which the district court sat permitted only executors to bring such claims, and the heirs had not obtained such an appointment).

ORDER – 7

1   Despite Ms. Saleemi's contention that Mr. Masood has not been appointed as a

2   representative of the Estate, Mr. Masood fails to come forward with any claim that he has

3   obtained such an appointment.  He argues only that under Pakistani law (and by

4   incorporation Muslim law), Ms. Shahood's personal injury claims "vest immediately on

5   her death in her legal heirs . . . without the need for any court appointed executor or

6   administrator or any court action of any kind."  Resp. at 2.  The court finds that,

7   regardless of Mr. Masood's authority to sue under Pakistani law, his capacity to sue on

8   behalf of the Estate in this court is governed by Rule 17(b).  Mr. Masood does not assert

9   that he has obtained, or is seeking, appointment as an executor, administrator, or other

10  form of personal representative under Washington law.

11       The court further finds that Ms. Saleemi's contentions, although couched as

12  objections to "standing," are sufficient to satisfy Federal Rule of Civil Procedure 9(a),

13  which provides that defendant must raise a Rule 17(b) lack of capacity defense by

14  "specific negative averment" either by motion before pleading, or as an affirmative

15  defense in the answer.  See Fed. R. Civ. P. 9(a); De Saracho v. Custom Food Mach., Inc.,

16  206 F.3d 874, 878-879 (9th Cir. 2000) (holding that defendant waived lack of capacity

17  defense by not raising the issue until week before trial).[6]  Ms. Saleemi's first answer to

18  the complaint, filed on September 8, 2006, alleged that Mr. Masood "lacks standing to

19  assert claims on behalf of the Estate of Khatoon Shahood." Answer at 3 (Dkt. # 5).  The

20  gravamen of Ms. Saleemi's "standing" argument is that Mr. Masood failed to allege or

21  establish appointment as an executor, administrator, or other representative of the Estate.

22  See, e.g., Mot. at 6 ("Since Sohail Masood is neither an executor nor an administrator of

23

24

25

26

27       [6]But see  Brown v. Williamson, 134 F. Supp. 2d 1286, 1291 (D.C. Ala. 2001) ("[W]here
    the lack of capacity appears affirmatively on the face of the complaint, specific averment is not
28  necessary.") (citing Comstock v. Pfizer Ret. Annuity Plan, 524 F. Supp. 999, 1002 (D. Mass.
    1981)).

ORDER – 8

Khatoon Shahood's estate he has no standing to maintain any claims on behalf of her estate . . . .); Objections to Proposed Am. Compl. at 3 ("[U]nless and until Sohail Masood is appointed as the personal representative of his mother's estate, he has no standing by the laws of Pakistan (or the laws of the USA) to assert tort claims for general damages on behalf of the deceased or her estate."). Thus, while Ms. Saleemi may have couched her objections in terms of standing, she has consistently contested what is essentially Mr. Masood's capacity to pursue this suit as a representative of the Estate. As such, the court finds that Ms. Saleemi's argument suffices as "specific negative averment" under Rule 9(a).

Because Mr. Masood fails to answer Ms. Saleemi's contentions with any argument that he has obtained an appointment as an administrator, executor, or personal representative of the Estate under Washington law, the court concludes that Mr. Masood lacks capacity to sue as a representative. The court thus grants Ms. Saleemi's motion and dismisses all claims Mr. Masood asserts on behalf of the Estate.

**C.     Mr. Masood's Personal Claim for Intentional Infliction of Emotional Distress**

The court next addresses Ms. Saleemi's argument that Mr. Masood's personal tort allegations fail to state claims upon which relief may be granted. In light of the court's holding above, the court does not address the claims for injuries to the Estate. As to Mr. Masood's personal claim against Ms. Saleemi for intentional infliction of emotional distress ("IIED"), the court concludes that his allegations, accepted as true and taken in a light most favorable to Mr. Masood, are insufficient to state a claim upon which relief may be granted.

Mr. Masood alleges that Ms. Saleemi's actions, including kidnapping Ms. Shahood, concealing her whereabouts, denying Ms. Shahood medication and medical care to induce fraud, creating and disseminating fraudulent documents in Ms. Shahood's

ORDER – 9

name, and burying Ms. Shahood's body in a secret location without religious observances, were undertaken to cause Mr. Masood emotional distress. Am. Compl. ¶ 29. As a proximate cause of Ms. Saleemi's actions, Mr. Masood claims to have suffered mental distress, depression, and anxiety. Id. ¶ 30.

The court applies the choice of law provisions of the forum state to determine the substantive law governing this claim. See Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005) (citation omitted). Under Washington law, the rights and liabilities of the parties in cases sounding in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties. See Rice v. Dow Chem. Co., 875 P.2d 1213, 1217 (Wash. 1994) (citing the Restatement (Second) of Conflict of Laws § 145(1)). The court evaluates the following contacts with each potentially interested state: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered. Id. In personal injury cases, the law of the state where the injury occurred applies unless another state has a greater interest in determination of a particular issue. See Martin v. Goodyear Tire & Rubber Co., 61 P.3d 1196, 1199 (Wash. Ct. App. 2003) (citation omitted). According to the complaint, Mr. Masood resided in Oregon during the occurrence of events causing him distress. Compl. ¶ 1. His emotional distress, i.e., the injury, thus occurred in Oregon. While the conduct causing the injury allegedly occurred primarily in Pakistan, neither Mr. Masood nor Ms. Saleemi resides there; Mr. Masood is a resident of Oregon and Ms. Saleemi is a resident of Washington. Id. On the facts as alleged, the court concludes that Oregon, the situs of the alleged injury, has the most significant relationship to the occurrence and the parties.

ORDER – 10

1   To state a claim for IIED under Oregon law, a plaintiff must set forth facts
2   demonstrating the following elements: (1) the defendant intended to inflict severe
3   emotional distress on the plaintiff; (2) the defendant's acts were the cause of the
4   plaintiff's severe emotional distress; and (3) the defendant's acts constituted an
5   extraordinary transgression of the bounds of socially tolerable conduct.  McGanty v.
6   Staudenraus, 901 P.2d 841, 849 (Or. 1995) (quoting Sheets v. Knight, 779 P.2d 1000,
7   1009 (Or. 1989)).
8
9   Mr. Masood's allegations, although conclusory, are sufficient to satisfy the intent
10  and proximate cause elements of an IIED claim.  Mr. Masood alleges that Ms. Saleemi's
11  actions "were undertaken for the purpose" of causing Mr. Masood emotional distress,
12  which proximately caused mental distress, depression, and anxiety.  Compl. ¶¶ 29-30.
13  The third element, whether the complaint sufficiently alleges conduct that
14  constituted an extraordinary transgression of the bounds of socially tolerable conduct, is a
15  question of law for the court.  Harris v. Pameco Corp., 12 P.3d 524, 529 (Or. Ct. App.
16  2000).  Determining whether the alleged conduct is sufficiently extreme or outrageous is
17  a "fact-specific inquiry" made on a "case-by-case basis considering the totality of the
18  circumstances."  Lathrope-Olson v. Dept. of Transp., 876 P.2d 345, 346 (Or. Ct. App.
19  1994).  The factors that may be relevant to the inquiry include, whether a special
20  relationship exists between the parties, whether the conduct was undertaken for an
21  ulterior purpose or to take advantage of an unusually vulnerable individual, and the
22  setting in which the conduct occurred – for example, in a public venue or within the
23  employment context.  Rosenthal v. Erven, 17 P.3d 558, 560-61 (Or. Ct. App. 2001).
24
25  Although Mr. Masood alleges that Ms. Saleemi's ulterior motive was her own
26  personal economic gain in diverting inheritance to herself, the setting in which the
27  conduct occurred was not a public venue or within the employment context; nor does the
28

ORDER – 11

complaint allege that Mr. Masood is unusually vulnerable.  The other factor to consider, the relationship between the parties, is perhaps the most important in determining what type of conduct is actionable.  "[A] defendant's position or role *vis-á-vis* a plaintiff may be one that imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock than would be true in arm's length encounters among strangers."  Willams v. Tri-County Metro. Transp., 958 P.2d 202, 204 (Or. Ct. App. 1998) (quotation omitted).  In fact, the lack of such a relationship generally defeats a conclusion that the conduct is actionable through an IIED claim.  Delaney v. Clifton, 41 P.3d 1099, 1107 fn.7 (Or. Ct. App. 2002) (listing special relationships in successfully pleaded claims, including employer/employee, landlord/tenant, supervisor/employee, and pastor-therapist/parishioner-patient).

    While Mr. Masood and Ms. Saleemi are brother and sister, their relationship imposes no fiduciary obligation.  Indeed, to approve of Mr. Masood's claim would require the court to accept the seemingly ill-advised conclusion that a sister owes her brother a greater obligation to refrain from subjecting him to abuse, fright, or shock. Although Ms. Saleemi and her mother may have had a special relationship, based primarily on Ms. Saleemi's agreement to take care of her ailing mother, Oregon courts have been reluctant to allow, as here, the assertion of an IIED claim by a third-party to a special relationship.[7]  In Delaney, a patient's former husband sued her professional counselor and clinical psychologist for IIED based on the misdiagnosis of his then-spouse's condition.  Id. at 1104.  Noting that "[s]evere distress to other family members is

_____

    [7]The Oregon Supreme Court has not expressly recognized a "third-party" IIED claim, nor identified its limits.  Delaney 41 P.3d at 1105.  Specifically, the Oregon Supreme Court has not adopted the view of Restatement (Second) of Torts § 46(2) (1965), which limits recovery for a "third-party" IIED claim to circumstances where the injurious conduct was directed at a plaintiff's immediate family member and the plaintiff was physically "present" at the time of the conduct.  Id.

ORDER – 12

predictable and perhaps even inevitable" in "many therapy situations," the court declined

to put therapists in the "untenable position of potentially compromising their judgment . .

. in order to safeguard the emotional well-being of persons outside the patient-therapist

relationship." Id. at 1107-08.  Relying on Delaney, a federal district court dismissed a

plaintiff's IIED claim under Oregon law against his niece, finding that, "although they

were related by blood" the plaintiff's niece owed him no heightened duty of care.

Hutchens v. Hutchens-Collins, No. 04-281, 2005 WL 1801670 at *3-*4 (D. Or. June 28,

2005).  In Hutchens, the plaintiff alleged that his niece had orchestrated changes in his

mother's financial affairs, and thus claimed that the sight of his mother (distraught over

her finances), combined with the realization that he would be deprived of an inheritance,

triggered severe emotional distress.  Id. at *3.  In dismissing the claim, the Hutchens

court observed:

> [N]eedless to say a dispute among family members surrounding the end of a
> relative's life and disposition of the relative's belongings necessarily deals with
> inherently and emotional and stressful issues.  The conduct of some family
> members is substantially certain to cause severe emotional distress to other
> family members.  To allow an IIED claim under such circumstances is
> problematic at best.

Id. at *4.  Those concerns are directly applicable here.

Considering, in particular, the absence of a special relationship, the court

concludes that the complaint does not plead sufficiently outrageous conduct from Mr.

Masood's vantage point.  In essence, Mr. Masood alleges that upon learning of Ms.

Saleemi's conduct *vis-á-vis* their mother, he suffered emotional distress as a collateral

consequence of his mother's suffering.  The most egregious of Ms. Saleemi's alleged acts

include the kidnapping of Ms. Shahood, concealing her whereabouts, denying her

medication and medical care to induce fraud, and concealing the location and

circumstances of her death.  See Am. Compl.  Mr. Masood does not purport to have

ORDER – 13

personally witnessed this conduct or its effect on Ms. Shahood, which occurred entirely in Pakistan.  Notably, according to the amended complaint, Mr. Masood did not even discover Ms. Saleemi's conduct until two or three years after Ms. Shahood's death in 2003.  Id. ¶ 16.  Although these allegations may paint a frightening scenario as to Ms. Shahood, Mr. Masood's alleged experience does not rise to that level.  That Mr. Masood allegedly suffered distress, years after abusive acts took place against a third party, is too diluted an experience to support his own claim for IIED.  The court thus concludes that Ms. Saleemi's acts did not constitute an extraordinary transgression of the bounds of socially tolerable conduct as to Mr. Masood.  Because Mr. Masood fails to state a claim upon which relief may be granted, the court grants Ms. Saleemi's motion for summary judgment in dismissing this claim.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS Ms. Saleemi's motion for summary judgment (Dkt. # 48). The court DENIES as moot Mr. Masood's motion to lift the stay on discovery (Dkt. # 50).

The court directs the clerk to enter judgment consistent with this order.

DATED this 13th day of July, 2007.

JAMES L. ROBART
United States District Judge

ORDER – 14